This morning is 18-1028 Coda Development v. Goodyear Tire & Rubber The case is still about Coda and Goodyear meeting, Goodyear not having anything with SIT going on, and then right after that, Goodyear is filing for patent applications. That's still the core of the case. Can I clarify? If we agree that the original complaint was sufficient to pass a motion to dismiss, you'd still rather go forward on the amended complaint? Yes, Your Honor. In fact, we would go in and renew our Rule 59 motion because we just think it would be confusing otherwise. If we were inclined to do so, it would save a lot of potential hassles if we let the district court know that... I guess the question is, I assume you want us to do this so we don't leave open the possibility that you're going to be stuck with your original complaint. Correct, Your Honor. We think the most practical thing is to move forward on the amended complaint. However, we would very much like to not be here again a year from now. They may renew a motion to dismiss on an amended complaint. We understand that. That's perfectly acceptable. Defendants are allowed to move to dismiss amended complaints as though they're allowed to dismiss original complaints. What we think would be improper, however, is to repeat all the same mistakes. For example, on the inventorship claims and the trade secret claims, we don't think it would be appropriate to go another round and to have Goodyear come in and argue on a motion to dismiss about the merits, specifically about whether Coder's trade secret claims were publicly disclosed. While we would like to go forward on the amended complaint, we would request that this court address the propriety of engaging in an analysis of the merits, in particular, whether Coder's trade secrets were in fact publicly disclosed. Can I just ask you about that? Maybe I'm just confused because there's so many complaints. I thought the problem you had with what the district court did or how things went down, you weren't precluding them in a motion to dismiss from raising all this stuff in terms of the claims and the prior art. I thought the concern was that they had only come in in the reply phase and therefore you didn't have an opportunity to respond. My misunderstanding, it seems to me like now you're kind of getting involved with what they could have raised in the first instance of the motion to dismiss. Your Honor, I think we raised both issues. Coder does have a concern about the fact that Goodyear raised Mr. Fraubel's article and made its argument for the first time on reply and that Coder was not afforded an opportunity to respond. Okay, yeah, but that doesn't go to the fact that they cannot raise it in the first instance in the original motion to dismiss, at which point you would have an opportunity to reply to it. Correct. That would fix that, right? Well, Your Honor, Coder's position is that it is- It would be a conversion at that point. That's correct and I believe Coder did argue that, that if Goodyear wants to come back and argue on a motion to dismiss that Coder's trade secrets were publicly known and they want to submit prior art extraneous to the complaint that's not referenced in the complaint to make that argument, that requires conversion to a motion for summary judgment and it's really premature and as this court has held numerous times- Did he make a 56F argument about discovery? Exactly, Your Honor. So this court deals with, as everybody knows, patent infringement cases all the time. The equivalent here is you get a patent infringement case where there's a motion to dismiss and the defendant argues the asserted patents are invalid. Look at all this prior art. There's 200 pieces of prior art and there's all kinds of obviousness arguments and all you have to do is take judicial notice of the prior art and we can do our anticipation and obviousness analysis. Let's get to it right here. Right on motion to dismiss. I don't think, I don't know if that's ever happened. I don't believe it, you know, it's not appropriate and it just doesn't happen. And the reason is because you're getting into the merits on the motion to dismiss. And you're going to want to do discovery. You're going to want to do discovery and there's a number of opinions from this court that points out that it is exactly this sort of analysis, comparing, you know, a patent or intellectual property to the prior art that requires expert analysis. That's exactly why we supplied with our amended complaint an expert declaration from Dr. Klopp. It's also why we supplied a factual declaration from Mr. Fraubel. These are not, and all those issues are the issues you're going to have to get into to determine whether or not what Goodyear argues, which is a tube in the sidewall in the bending region of its own patent that it said was the novel basis to have that patent granted, Goodyear's now arguing that somehow that was known, I guess, in validating its own patent in Mr. Fraubel's article. Well, that's what confuses me a little bit. I assume they disagree with the facts, but your allegations are, at least, are their patents are coextensive with your client's trade secrets. Is that right? Correct, Your Honor. So, and if you're correct on that, then if their response is it's not a trade secret because there's prior art, then doesn't that automatically invalidate their patents, too? Which is exactly why we were floored when we saw their reply. So, there must be some, at least in their view, distinctions between your trade secrets and their patents, but we don't know any of this. And it's not an issue for a motion to dismiss in any of it. That's a factual issue. To be clear, Mr. Fraubel, as you can see here, identified in its reply, discloses a pump tube in the bead of the tire, which is very rigid, and pushes against the rim, which is another very rigid member. Those physics are different than when you move a pump tube to what's called a, more up in the sidewall, in the middle part of the sidewall of the tire. There, the rubber moves in different ways, and Mr. Fraubel was able to, with the tube in that area, create sufficient pumping pressure to inflate a tire, where that wasn't the case when he tried on the rim. That was his first iteration. So, the article is about his first iteration, which he could never get to work, putting the tube down by the rim. In the prosecution history of the 586 patent, Goodyear distinguished not one, but two And we've got this in our brief, so I won't waste the time quoting it now. And you're in your rebuttal, so why don't we hear from the other side. Thank you, Your Honor. Thank you. Good morning, Your Honors. You may raise the court. On page two of the red brief, it says that COTA alleged in its complaint that it disclosed the very same purportedly secret technology at trade shows and to third parties in 2008. That's about most of the way down, second paragraph. Mm-hmm. Isn't that a question of fact? No, Your Honor, and in fact, Judge Wallach, if I could just tell the court very briefly how I intend to structure my argument, because that's the first point I'm going to get to. But the first thing I want to address is the plausibility standard of Twombly and Iqbal. We didn't hear anything about that in my friend's opening statement here. And that's exactly why this case was properly, the original complaint was properly dismissed. The other two points I would follow with is that under Sixth Circuit law, either allowing a motion to amend when they didn't ask for a motion to amend before judgment is an abuse of discretion standard and it's not an abuse under Sixth Circuit law. And it's certainly not an abuse to deny it after judgment again when it wasn't asked for during- Yeah, but the timing of this was a little, it was a little difficult to anticipate that after there was a motion pending before the district court judge, which was sat on for nine months, almost a year maybe. And then as your friend pointed out, unless you think you're going to tell us he's wrong, she simultaneously granted the motion to dismiss at the same time she ruled on the motion. As a procedural matter, Chief Judge Prost, he's exactly right. But what I will tell you that he's wrong about is this notion that they didn't have an opportunity to amend. And let me give you, let me first, I think I haven't yet answered Judge Wallach's question. You haven't and you're assuming that we agree with you that Twombly and Iqbal apply and that the facts that are alleged aren't in fact compelling. Well, your honor, in fact, Twombly and Iqbal do apply. They were applied by the district court. There was no argument that they don't apply. And in fact, that's the standard. It's a- Well, of course they apply. But here's why they apply specifically- They always apply. Of course. Here's why they apply specifically here, Judge Wallach. These are trade secret type complaints here, even in the context of the correction of inventorship. Their claim is that this is a secret. Now what the complaint says is all over the map with regard to secret. It refers to self-inflating tire technology as the trade secret and things related to that. Yes, it says that. What else does it say about the self-inflating tire technology? It also says it was publicly displayed at trade shows. It also says about the self-inflating tire technology that it was given awards for being so great. All of this happening, by the way, many years in advance of the- Did they say that they disclosed how to do that? There is nothing. And in fact, that was what our motion to dismiss was based on. These contradictory, conflicting allegations in Sixth Circuit law, the case of Bailey versus Ann Arbor says internally contradictory factual pleadings make allegations implausible. We said that to the district court and they did that and- Supposing we read it as not internally contradictory. Well, I'm not sure how you can read saying things have been publicly displayed, publicly filed, disclosed much of this. In fact, we would say all of it. That's by the way all that the article, the Hrabel article does. It starts with saying in a CODA patent, all of these things were disclosed. The very first sentence of that article talks about the patent. That article is really just summarizing- Where was that tube located? Where was that tube located? Well, if you look at the PCT patent, it disclosed a tube in a sidewall. That's in Appendix 354. But that same application says, referring to Figure 7a, that although the Chamber 1 in the examples is placed mainly to the Tire 4 bead, it can also be created while keeping the considerable portion of the design advantages anywhere else in the wall or at the wall of the tire. Their own patent says put it anywhere in the wall and it'll be fine. They've already disclosed to the world everywhere in the wall is okay. This is not a trade secret. They wrote articles about it. That's what the Hrabel article says. They wrote articles about their own patent. That's what the video shows. There's nothing secret here. All we did from Goodyear's perspective is to say in our motion to dismiss, these are implausible. What the district court said was, at least in part, there's a statute of limitations problem, an argument that you did not raise, right? The only argument that we didn't raise was, in the particular language that the district court used, was the one about suspect conduct. What we did say was that CODA was a frequent filer that kept tabs on what was going on in this area. That along with the Goodyear patent should have given them ample notice more than four years before their lawsuit. If I can come back to the plausibility problem, this is the first opportunity. You don't have to wait for a court to tell you that your claims are bad before you get to amend. You don't have to sit around and wait for that because that's the first opportunity that they have. We told them that their claims were implausible. They decided to double down and they said, and it's really sort of obnoxious honestly when you look back at it, they said, Goodyear knows what it took. Wait a minute, are you talking, tell us which documents you're talking about. I'm talking about the original complaint and then the motion to dismiss. They respond to that and say, we don't need to give you any more information because Goodyear knows what it took. Then you've got your reply and you're not disputing that you're coming in with all of this new stuff that deals with the prior art. I wouldn't say it's all this new stuff. It is responsive to the arguments that were made in opposition because ... It's not in the complaint. It's not in the complaint. It's additional material. It is material. Based on that alone, why shouldn't it have been converted to a Rule 56 judgment? Because all of the additional material was judicially noticeable. Again, under Sixth Circuit law, and this is the city of Monroe case at footnote one, a court may take account of judicially noticeable materials in ruling on a Rule 12B6 motion to dismiss. You didn't just put in the materials. You made arguments with respect to the materials. Those arguments are really bound to how experts would construe the prior art, what the claim said. You did more than just say, and by the way, here are the attachments. I would say, Chief Judge Prost, that if you ... Well, we certainly did that. The main point was with regard to the trade secret allegations. We're trying to show, look, their allegations are implausible and look at all of these things that disclose these things that are within what they're now claiming are trade secrets. This is why it's so implausible. This is why this complaint has to be dismissed. You didn't do that in the first instance. Did you not contemplate that there would be a need or a possibility that it would be fair to allow the other side to respond to what you inserted? With regard to the prosecution history aspects of things, that was directly responsive. With regard to the Hrabel article, we thought that was coextensive with the properly judicially noticeable PCT patent, and it just elaborated on it. Did you run in opposition to their motion to file a surreply or alternative to strike? I believe we did. I think that's at page A897. What I think you have here, again, I want to get back to this notion, Chief Judge Prost, that they did not have an opportunity to amend, and that somehow or another that the district court's ruling and judgment in September of 2016 was really their first opportunity to amend. Because again, when we file a motion- Well, you can always amend as of right. Well, as of right, 21 days within 21 days of the filing of a dispositive 12B motion. That they could have done. They didn't do it. They could have then- You use the word obnoxious in describing the appellant's position that Goodyear should have known. Speaking hypothetically, if Goodyear did indeed steal this technology, why is it obnoxious to say they should have known they stole it, other than you don't like saying you stole it? No, no, no. That's not the obnoxious part about it at all. The obnoxious part about it is, and this is unfortunately a standard feature of trade secret cases, is that the plaintiff comes in and pleads a trade secret case and says, my secrets are all these things. The defendant comes in and says, look, you have just contradicted yourself six ways from Sunday in this complaint. We don't know what it is that you say we took. That's why you have motions for a more definite statement. Well, in effect, we didn't make that motion, but in effect, we're saying that you don't meet the Twombly Iqbal standard, so dismiss. You've got an opportunity. That's exactly what Rule 15 allows, within 21 days. Sensible, you have an opportunity. That I want to make clear. They had an opportunity to amend at that point. They instead decided to double down and say, Goodyear knows what it took. First of all, even if we're talking about the bare pre-Twombly notice pleading that we all learned about in law school where putting three sentences in a complaint is enough and that's not enough after the plausibility standard, but even if that were enough, saying you know what you did, it's innuendo. It doesn't give us fair notice because, quite frankly, our position is that what we did is to invent something and that anything that we learned from CODA was public record stuff. It wasn't a trade secret at all. So it's their obligation, if they're going to sue us, to tell us what it is that they say we took. Now, Judge Wallach, this is important. It's still notice pleading. It is notice pleading, but that gives us at least an opportunity to respond by saying, Ah-ha, that's not secret or that's something that you actually disclosed in your own judicially noticeable patent. You get rid of expensive litigation at the outset because you know it's going nowhere. That's why you have motions for more definite statements. Well, the fact of the matter is that our motion to dismiss, for all practical purposes, should have been, for them, a clue that they needed to amend if they had something. I think when I use the term obnoxious, that's a word I'm not prone to use, but I chose it carefully here because it really does sort of say it's innuendo of the sort that you go, I'm not going to tell you what you did, but you know you did it and you're guilty of it. And somehow or another, all of a sudden, it's our burden to unplead their innuendo. That's not the plausibility standard. Now, if I could just turn very quickly to the other two points about the post-judgment motion to amend, Sixth Circuit law here forecloses the relief that they're asking for. Both of those are abusive discretion standard. They say that the district court abused its discretion by not sua sponte, granting leave to amend. But COTA never asked to amend beforehand, and as I said, they have plenty of opportunities to do so. Did you ever, do you allege any prejudice as a reason to deny the motion to amend? Well, there is prejudice aplenty, though prejudice is not required by the Rule 59 standard. But the prejudice is plenty, and it's exactly what we're talking about here. It is having to defend and invest substantial amounts of money against a complaint that was not properly made, was not properly amended at any point, and continues to put a cloud onto this line of business. But let me just make sure that I... I mean, every one of those defendants is going to say that. Well, maybe it's not special prejudice, but the fact is that they could have eliminated this prejudice by doing things properly, and they didn't. Now, I just want to make sure to get across to the court the two Sixth Circuit cases, or the lines of Sixth Circuit cases, because this court has to apply that circuit's law here. With regard to the claim of abusive discretion for failing to give leave to amend in the dismissal order, Ohio Police and Fire says, quote, if a party does not file a motion to court to dismiss the claims with prejudice. That's exactly what this court did here. Sure. I mean, we can agree with you on all of that, that assuming she's right on the initial complaints insufficiency, it wasn't an abuse not to allow them to amend. Right. But if we disagree with you on the initial claim sufficiency, and reverse her on that, can I ask you what we asked your friend? Is there anything you would object to in them now going forward with the amended complaint? Or are you going to hold them to the original complaint, which we now find sufficient? I think the answer is that we, if I understand the hypothetical is that the case gets remanded, that would be that there is, you would say that there is a validly pled complaint here on the two sets of claims that they've still got going forward. That would effectively be all that you're doing. Then I think it's up to the district court under that circumstance to decide whether the Rule 59, do I have that right? Whether justice requires. It doesn't need to be, I mean, assuming we reverse her on the 12B motion and say this complaint was sufficient, is there anything that prevents them from now going forward and saying, well, we'd like to go forward with the amended complaint? I think then they'll have to make whatever showing is appropriate in that circumstance to show that they're entitled to amend at this point. You want to hypothetically give us the arguments that one would make against that? The hypothetical, I don't think, I don't have any idea that we would have any hypothetical arguments if we were on simply an interest of justice standard at that point. It might very well be a complaint that's futile because we haven't yet explored whether it states any claims any better. Just because it's longer, it doesn't make it better, but futility could be an example. You can move to dismiss. We could be here again in two years from now doing the same thing. We could be, but we shouldn't be, and that's why I would urge the court to affirm. My last point, and I'm sorry, I know I'm into the red time here, but the last point I wanted to make is. Thank you for at least acknowledging it. It's the end of the day. I'm sorry, Your Honor. I was just trying to get out the last point that the cases that you want to look at with regard to the denial of the Rule 59 motion and the leave to amend at that late date are Leisure Caviar and Begala. Both of those say, again, in much the same language as Ohio Police and Fire, it is not an abuse of discretion at that point in the case for a court to deny leave to amend post-judgment. And those are cited in the case? Those are cited in the brief. I'm not giving you anything new. Thank you, Your Honor. Thank you. Your Honor, that is absolutely not what Ohio Police and Fire says. That's a sleight of hand that's been going on nonstop, and I have to address it. Ohio Police and Fire says that, according to Goodyear, the default rule, this is page 33 of their red brief, the default rule is that if a party does not file a motion to amend or a proposed amended complaint in the district court, it doesn't say before judgment, it says in the district court, then it's not an abuse of discretion to refuse leave to amend. CODA did file in the district court, filed post-judgment, and if you read Ohio Police and Fire, it expressly says, a plaintiff has three opportunities to amend, once under 15A1, as of right within 21 days of seeing a motion dismissed, two, freely after that, if you don't take advantage of your as of right period when justice so requires, and three, citing Morse Voting Order, the case we rely on, after final judgment, but before appeal. Under Rule 59, moving to alter the judgment in exactly the way we did. Page 33, this is the beginning of Goodyear's appeal addressing the amendment issue. The first thing they say is this default rule. They say it right, they have to, because they're quoting it, and then on the very next page, they switch from in the district court, you have to do it, to before judgment. It's a sleight of hand, did it three times up here at this podium, and it's wrong, and that you have to pay attention to, because their primary case they rely on says you get to do it in the district court. My last point, because I think I have about 30 seconds left, no, I guess I have. You've got some extra time there. Thank you, I was surprised I couldn't do the math. Don't thank me, thank the chief. Okay, so, trade secret pleading allegations. There is a Southern District of Ohio case, REXAM, it's Southern District of Ohio, but it is construing the Ohio trade secret statute, Williamson v. REXAM beverage can, and it was a motion for a more definite statement. There, Williamson pleaded a unique and highly valuable process for welding metal seams using ultrasonic welding technology. That's the trade secret allegation, that was held sufficient. That was the issue, is that sufficient, and yes, it was held sufficient. Added to that, and by the way, CODA identifies four categories at exactly that level of specificity, so not just where this is ultrasonic welding technology generally, CODA identifies four specific categories within SIT, and it gave the what, the when, and the how, and that's what REXAM says. In addition, it said when those trade secrets were disclosed, at what meetings, at exactly who was there, and what they looked at, the prototype. So, the other, you know, there's also this notion that we had all these opportunities to address this prior art issue. If you look at the FUMA case, the FUMA case says that's entirely inappropriate. It lays out what's relevant on a 12B6, the court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, make reasonable inferences on behalf of the plaintiff, the court's inquiry is limited to the content of the complaint, et cetera, et cetera, and this, I think, is very important. It says in deciding a rule 12B6 motion, a court must be sure to determine not whether the complaining party will prevail in the matter, but whether it is entitled to offer evidence to support the claim's maintenance complaint. These are all beefs that we're going to have through the course of the case, and that parties do have in the course of the case. They just don't have them on the motion for 12B6. I think the other thing that's instructive about FUMA is when you're saying, when a defendant comes in and says there should be more allegations, think about what allegations they're asking for. FUMA says defendant's argument is not well taken. As plaintiff notes, under the well-pleaded complaint rule, the court may look only to plaintiff's complaint and not to any defenses or counterclaims asserted by the defendants. An argument suggesting that plaintiff must defend all possible factual disputes in his complaint goes well beyond any required standard for pleading allegations in the complaint itself. So what CODA absolutely doesn't have to do, according to controlling Northern District of Ohio law, FUMA 2015 decided two months before we filed our complaint. We don't have to pre-butt, in a sense, all of Goodyear's arguments that they're going to make. Okay. We're now out of time. We thank both sides.